**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMERIWOOD INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | No. 4:06CV524-DJS |
| | ) | |
| **PAUL LIBERMAN, TODD FRIDLEY,** | ) | |
| **TED KLEIST, PINNACLE DESIGN, LLC,** | ) | |
| **and PINNACLE DESIGN CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff alleges in its first amended complaint that defendants--plaintiff's former employees and their recently formed company and corporation--improperly used plaintiff's computers, confidential files, confidential information regarding its ready-to-assemble television stand business, and defendant former employees' positions of trust and confidence while in plaintiff's employ to sabotage plaintiff's business relationships and divert plaintiff's business to themselves. Plaintiff has asserted the following claims against defendants: (1) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, (2) Violation of Mo. Rev. Stat. §§ 569.095 and 569.099, (3) Breach of Fiduciary Duty and Duty of Loyalty, (4) Interference with and Inducement of Breach of Fiduciary Duty and Duty of Loyalty, (5) Misappropriation of Trade Secrets, (6) Unfair Competition, (7) Tortious Interference, and (8) Conspiracy.

Now before the Court are plaintiff's motion to compel defendants' compliance with plaintiff's document requests and interrogatories and plaintiff's motion to extend the date for amending the complaint to name additional defendants. Plaintiff served defendants Liberman, Fridley, Kleist, and Pinnacle Design Corp. ("defendants")[1] with document requests and interrogatories on June 16, 2006, and received responses on July 31, 2006.[2] Defendants objected to every document request and did not identify any additional documents they would produce subject to plaintiff's requests. Plaintiff alleges that defendants' interrogatory responses are incomplete, largely avoid the substance of the relevant inquiry, and do not answer inquiries concerning another company that defendant former employees may have started called Select Home Products, LLC ("SHP").

Plaintiff requests that the Court compel defendants to do the following: (1) supplement their document request responses to

---

[1] Defendant Pinnacle Design, LLC was not a party to the instant action when plaintiff served the discovery requests at issue. Consequently, the Court's order compelling defendants to respond to certain discovery requests does not apply to defendant Pinnacle Design, LLC.

[2] Plaintiff served three sets of document requests and three sets of interrogatories on defendants--a set of each on defendants Liberman and Kleist jointly, and separate sets on defendants Fridley and Pinnacle Design, Corp. As defendants uniformly responded to the document requests and interrogatories at issue, the Court will refer to the document requests and interrogatories as they were served on defendants Liberman and Kleist. The parties should interpret the Court's memorandum and order to also refer to the corresponding document requests and interrogatories posed to the remaining defendants.

indicate whether they are withholding responsive documents subject to their boilerplate objections and to identify the requests to which their production responds and the types of responsive documents withheld by defendants; (2) provide information and documents regarding SHP in response to plaintiff's document requests and interrogatories; (3) produce a mirror image[3] of all computers used by any defendant to conduct business on his own behalf or on behalf of plaintiff, defendant Pinnacle Design Corp. or SHP, including defendants' personal home computers, as requested by Document Request No. 14; (4) provide information regarding communications and agreements with plaintiff's actual and potential customers in response to Interrogatory Nos. 3-4, 6 and 8; and (5) provide information underlying defendants' alleged damages claims as requested by Interrogatory Nos. 11-14.

Pursuant to Fed. R. Civ. P. 26(b)(1), the parties may obtain discovery regarding any unprivileged matter relevant to a claim or defense of any party, regardless of the admissibility as long as the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Upon careful consideration of plaintiff's motion to compel, the Court will grant plaintiff's motion in part and compel defendants as follows. Considering the close relationship between plaintiff's claims and

---

[3] "A mirror image is an exact duplicate of the entire hard drive, and includes all the scattered clusters of the active and deleted files and the slack and free space." U.S. v. Triumph Capital Group, Inc., 211 F.R.D. 31, 48 (D. Conn. 2002).

defendants' computer equipment, and having cause to question whether defendants have produced all responsive documents, the Court will allow an independent expert to obtain and search a mirror image of defendants' computer equipment. Furthermore, the Court will compel defendants to respond to plaintiff's Interrogatory Nos. 2, 3, 4, 6, 8, 12, and 14. Plaintiff's motion to compel will otherwise be denied. Additionally, the Court will deny without prejudice plaintiff's motion to extend the date for amending the complaint to name additional defendants.

**A.   Hard Drive Images**

Plaintiff's Document Request No. 14 seeks "All computer or portable or detachable hard drives, or mirror images thereof, used by Liberman, Fridley, or Kleist since May 2005, including but not limited to any computer or portable or detachable hard drive in their homes." Defendants' supplemental response objects that the request is overbroad, vague, and burdensome and calls for irrelevant information.

As amended effective December 1, 2006, Rule 34(a) allows parties to request that another party:

> produce and permit the party making the request . . . to inspect, copy, test, or sample any designated documents or electronically stored information — including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained — translated, if necessary, by the respondent into reasonably usable form.

Fed. R. Civ. P. 34(a). However, Rule 34(a) does not give the requesting party the right to search through all of the responding party's records. See In re Ford Motor Co., 345 F.3d 1315, 1316-17 (11th Cir. 2003).

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34(a) advisory committee's note. "Courts have found that such access is justified in cases involving both trade secrets and electronic evidence, and granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation." Balboa Threadworks, Inc. v. Stucky, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006); Physicians Interactive v. Lathian Sys., Inc., No. CA 03-1193-A, 2003 WL 23018270, at *10 (E.D. Va. Dec. 5, 2003) (granting plaintiff limited expedited discovery to obtain mirror images of defendants' computer equipment containing electronic data relating to defendants' alleged attacks on plaintiff's file server).

The recently amended Federal Rules of Civil Procedure set forth the following burden-shifting analysis a court should

implement in deciding whether to compel production of electronically stored information ("ESI"):

> On motion to compel discovery . . . , the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2). Plaintiff asserts that defendant former employees forwarded plaintiff's customer information and other trade secrets from plaintiff's computers to defendants' personal email accounts, presumably for the purpose of using other computers to access and store those files. Plaintiff postulates that the documents may have been further disseminated to others and/or deleted to hide defendants' actions. It is generally accepted that deleted computer files are discoverable. See, e.g., Antioch Co. v. Scrapbook Borders, Inc., 210 F.R.D. 645, 652 (D. Minn. 2002) (finding that defendants' computer equipment may have relevant information which is being lost through the normal use of the computer and ordering defendants to allow plaintiff's computer expert to make a mirror image of defendants' hard drives).

Defendants argue that the requested information has already been disclosed and that they have not refused to search through their ESI for such communications. However, as recognized in the advisory committee's note to Fed. R. Civ. P. 26(f), some ESI might not be obtained during a typical search.

6

> Computer programs may retain draft language, editorial comments, and other deleted matter (sometimes referred to as "embedded data" or "embedded edits") in an electronic file but not make them apparent to the reader. Information describing the history, tracking, or management of an electronic file (sometimes called "metadata") is usually not apparent to the reader viewing a hard copy or a screen image.

Fed. R. Civ. P. 26(f) advisory committee's note. Additionally, plaintiff filed with the Court an email sent from defendant Liberman's personal email account to an employee at Samsung, one of plaintiff's customers, while defendant Liberman was still in plaintiff's employ. Plaintiff asserts and defendants do not dispute that the email was produced by Samsung after defendants failed to produce this email in response to discovery requests.

In light of the Samsung email, the Court finds that other deleted or active versions of emails may yet exist on defendants' computers. Additionally, other data may provide answers to plaintiff's other pertinent inquiries in the instant action, such as: what happened to the electronic files diverted from plaintiff to defendants' personal email accounts; where were the files sent; did defendants store, access or share the files on any portable media; when were the files last accessed; were the files altered; was any email downloaded or copied onto a machine; and did defendants make any effort to delete electronic files and/or "scrub" the computers at issue.

Arguing in the alternative, defendants submitted affidavits describing the significant costs of copying the hard

7

drives, recovering deleted information, and translating the recovered data into searchable and reviewable formats. Given the extensive cost involved in performing the tasks, the Court is persuaded that defendants have established that the information is not reasonably accessible because of undue burden and cost.

   **1. Good-Cause Inquiry**

The advisory committee's note to Fed. R. Civ. P. 26(b)(2) sets out several factors the Court should consider in deciding whether to require a responding party to produce information that is not reasonably accessible, namely:

> (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

"Courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." Balboa Threadworks, 2006 WL 763668, at *3. For example, a party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests. See, e.g., McCurdy Group v. Am. Biomedical

Group, Inc., 9 Fed. Appx. 822, 831 (10th Cir. 2001) (holding that skepticism concerning whether a party has produced all responsive, non-privileged documents from certain hard drives is an insufficient reason standing alone to warrant production of the hard drives). However, discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive. See Simon Prop. Group L.P. v. mySimon, Inc., 194 F.R.D. 639, 641 (S.D. Ind. 2000) (allowing plaintiff to mirror image defendant's computers where there were "troubling discrepancies with respect to defendant's document production").

In Antioch, the court declined to allow the examination of any ESI other than the information that had been deleted because the requesting party had not demonstrated that the producing party was unwilling to produce relevant evidence. See Antioch, 210 F.R.D. at 653 n.7. The aforementioned Samsung email raises the question of whether defendants have in fact produced all documents responsive to plaintiff's discovery requests. Furthermore, in cases where a defendant allegedly used the computer itself to commit the wrong that is the subject of the lawsuit, certain items on the hard drive may be discoverable. Particularly, allegations that a defendant downloaded trade secrets onto a computer provide a sufficient nexus between plaintiff's claims and the need to obtain a mirror image of the computer's hard drive. For example,

in a similar situation, a Florida Circuit Court ordered a defendant to allow a plaintiff--the defendant's former employer--to examine a computer allegedly used by the defendant in downloading the plaintiff's proprietary information. AutoNation, Inc. v. Hatfield, No. 05-02037, 2006 WL 60547, at *3 (Fla. Cir. Ct. Jan. 4, 2006). The plaintiff was permitted to determine whether the defendant forwarded that information to anyone else and whether any of the plaintiff's other materials existed on the computer. Id.

In the instant action, defendants are alleged to have used the computers, which are the subject of the discovery request, to secrete and distribute plaintiff's confidential information. How and whether defendants handled those documents and what defendants did with the documents is certainly at issue. The Court recognizes defendants' privacy concerns over the information contained on their computers, but finds that the procedure below in addition to the Court's protective order sufficiently addresses these interests.

In performing the good-cause inquiry, the Court is also permitted to set conditions for discovery, including but not limited to payment by the requesting party of part or all of the reasonable costs of obtaining information from the sources that are not reasonably accessible. See Fed. R. Civ. P. 26(b)(2) advisory committee's note. As plaintiff does not object to incurring the costs for the requested procedures and defendants do not perform these procedures in the regular course of their business, plaintiff

will incur the costs involved in creating the mirror images, recovering the information, and translating the information into searchable formats, as described below. For the above reasons, this Court finds that plaintiff has shown good cause to allow it to obtain mirror images of defendants' hard drives under the following conditions.

   2. **Procedure Governing Creation of Mirror Images of Defendants' Computer Equipment and Subsequent Discovery of Information Contained Therein**

The Court has carefully reviewed the procedures adopted by courts addressing similar problems in <u>Antioch</u>, 210 F.R.D. at 653-54, <u>Simon Property Group</u>, 194 F.R.D. at 643-44, and <u>Playboy Enterprises v. Welles</u>, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999). The following three-step imaging, recovery, and disclosure process provides the requesting party sufficient access to information that is not reasonably accessible and ensures the process does not place an undue burden on the responding party.

   i. **Imaging Step**

First, plaintiff will select a computer forensics expert of its choice ("the Expert"), that has been trained in the area of data recovery, to produce mirror images of all computers and portable or detachable hard drives in defendants' possession, custody, or control and used by defendants Liberman, Fridley, or Kleist since May 2005, including but not limited to any computer or portable or detachable hard drive in their homes. Once the Expert

is chosen, plaintiff will notify defendants. The Expert will then execute a confidentiality agreement agreed to by the parties and sign a copy of and abide by the protective order in place in the instant action.

Defendants will then make available to the Expert, at their places of business or residences, and at mutually agreeable times, all of the computer equipment described above. The Expert will use its best efforts to avoid unnecessarily disrupting the normal activities or business operations of defendants while inspecting, copying, and imaging defendants' computer equipment. The Expert may not remove defendants' computer equipment from defendants' premises. Moreover, only the Expert and its employees assigned to this project are authorized by this order to inspect, or otherwise handle such equipment. No employee of plaintiff, or its counsel, will inspect or otherwise handle the equipment produced. The Expert will also maintain all information in the strictest confidence. Furthermore, the Expert will maintain a copy of the mirror images and all recovered data and documents until sixty days after the conclusion of litigation.[4]

Within ten days of the inspection, copying, and imaging of each item of computer equipment produced by defendants, the Expert shall provide the parties with a report describing the

---

[4] After the inspection, copying, and imaging of defendants' computer equipment, the Expert may perform the remainder of its responsibilities outside defendants' premises.

computer equipment defendants produced and the Expert's actions with respect to each piece of the equipment. This report shall include a detailed description of each piece of computer equipment inspected, copied, or imaged by the Expert, including the name of the manufacturer of the equipment and its model number and serial number; the name of the hard drive manufacturer and its model number and serial number; and the name of any network card manufacturer and its model number, serial number, and the media access control address wherever possible.

### ii. Recovery Step

Once the Expert has created copies and images of defendants' hard drives, it shall recover from the mirror images all available word-processing documents, incoming and outgoing email messages, PowerPoint or similar presentations, spreadsheets, and other files, including but not limited to those files that were "deleted."[5] The Expert shall provide the recovered documents in a reasonably convenient and searchable form to defendants' counsel, along with, to the extent possible, the information showing when any files were created, accessed, copied, or deleted, and the information about the deletion and the contents of deleted files that could not be recovered.[6] The Expert shall also provide

---

[5] As the fruits of these searches will only be disclosed to plaintiffs by defendants in response to discovery requests, defendants' privacy concerns should be assuaged.

[6] The Court may require that the Expert produce and transmit an additional copy of all data and recovered documents to the Court

plaintiff notice of when the documents and data were provided to defendants' counsel.

### iii. Disclosure Step

Within twenty days of the receipt of the recovered documents and data, defendants' counsel shall review the records for privilege and responsiveness, appropriately supplement defendants' responses to discovery requests, and send to plaintiff's counsel all responsive and non-privileged documents and information, in addition to a privilege log, which claims each privilege expressly and describes "the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5)(A). Thereafter, once plaintiff propounds any further discovery requests, defendants will search through the information provided by the Expert to locate all responsive documents and data, and shall then produce to plaintiff all properly discoverable documents and data, as well as a privilege log, as described above. Once plaintiff has reviewed the documents produced by defendants, as well as the privilege log, if plaintiff raises a dispute as to any of the documents by providing a cogent basis for doubting the claim of privilege, or for believing that there are further relevant

---

at a later date.

documents, plaintiff may file a motion to compel.

This procedure will govern the recovery of information and other data from defendants' computer equipment. With this procedure in mind, the Court directs the parties to "meet and confer" to determine the contents of the aforementioned confidentiality agreement and an appropriate time for the Expert to access defendants' computer equipment, keeping in mind the Court's directive to minimize the burden and inconvenience caused to defendants.

**B.   Document Requests**

Defendants objected generally that each document request is overbroad, vague, and burdensome, and calls for irrelevant and/or privileged information. Although defendants had already produced documents, after the instant motion to compel was filed defendants provided plaintiff with a supplemental response producing additional documents and listing which documents are responsive to which requests. As plaintiff's reply does not assert that defendants' supplemental response and document productions are inadequate, this Court will deny plaintiff's motion to compel with respect to plaintiff's document requests, excepting No. 14 as to defendants' computer equipment.

**C.   Interrogatories**

**1.   Select Home Products**

Plaintiff asserts that defendants have not responded

15

sufficiently to Interrogatory Nos. 2 and 19, which respectively ask who the principals and employees of SHP are and what are the original-equipment-manufacturer television-stand business ventures with which defendants have been involved since January 1, 2005. Plaintiff asserts that defendants did not answer Interrogatory No. 2 with respect to SHP and did not indicate that SHP was a venture in which they were involved in response to Interrogatory No. 19. Given the parties' filings and defendants' admission that defendant Kleist and his wife own SHP and that SHP facilitated sales of garage storage units, the Court is not persuaded that further information concerning SHP is responsive to Interrogatory No. 19, and will only compel defendants to answer No. 2.

2. **Communications with Plaintiff's Customers**

Interrogatory Nos. 3, 4, and 6 ask defendants to identify all the actual and potential customers with which any defendant or SHP has had contact and to state the names of the individuals involved in the communication, along with its date and substance. In addition to several general objections, defendants object that the interrogatories are overly broad and unduly burdensome and are not reasonably calculated to lead to the discovery of admissible evidence. However, defendants do list several different companies and persons, without providing information as to the date and substance of the communications or the people involved. In response to plaintiff's instant motion to compel, defendants do not

16

argue that the interrogatories are irrelevant, but only assert that they have produced documentation of the conversations and are continuing to search for more documentation. While in some circumstances document production may constitute a sufficient response to an interrogatory, defendants have not referenced any documents in their responses nor have they stated that such document disclosures exhaust their current recollection of any communications with customers, potential or otherwise. Consequently, the Court will compel defendants to further answer Interrogatory Nos. 3, 4, and 6.

Interrogatory No. 8 inquires as to the existence and terms of any agreements between defendants or SHP and plaintiff's customers. Here again, in addition to several general objections, defendants initially objected that the interrogatory is overly broad and unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants also generally referenced documents already produced. In defendants' response to the instant motion to compel, they state that they have never refused to produce documents relating to customer communications and are continuing to produce documents as defendants find them. Given that defendants do not oppose the motion with respect to Interrogatory No. 8 and assert they are still searching through their documents, the Court will compel defendants to respond to Interrogatory No. 8.

### 3. Damage Calculation Interrogatories

Defendants' counterclaim of tortious interference seeks damages based on the allegation that plaintiff's conduct caused defendants to deliver products in an untimely manner, thus leading to lost sales. Interrogatory Nos. 11 and 13 request that defendants state the basis for these claims and specifically ask that defendants identify details, such as when the alleged deliveries were due, the date the deliveries were actually made, and the alleged cost to defendants for each of the alleged late deliveries. Defendants' response to plaintiff's motion to compel compliance with Interrogatory Nos. 11 and 13 argues that the documents produced to date provide plaintiff with sufficient responses to the interrogatories. As plaintiff does not respond in its reply and evidently concedes that defendants have sufficiently complied with Interrogatory Nos. 11 and 13, the Court will deny plaintiff's motion to compel with respect to Interrogatory Nos. 11 and 13.

Interrogatory No. 12 asks that defendants provide the terms of the agreement between defendants and a substitute manufacturer that was retained as a result of plaintiff's alleged tortious conduct and No. 14 asks that defendants identify and describe all damages they are claiming in this matter. Defendants have not disclosed the terms of the agreement or the factual basis for the specific dollar figures for lost sales. Although

defendants assert they have produced communications, purchase orders, contracts, and delivery tables which provide the factual basis for their claims, the Court is not persuaded that defendants have sufficiently responded to Interrogatory Nos. 12 or 14 and will compel defendants to provide the terms of their agreement with An Hour, the substitute manufacturer, and the manner in which they calculated the damage amounts of $518,400.00, $1,500,000.00, and $8,000,000.00, as previously stated in defendants' answers to plaintiff's interrogatories.

**D.   Extension of Time to Amend Pleadings**

As noted above, also pending before this Court is plaintiff's motion to extend the date for amending the complaint to name additional defendants. The Court set September 22, 2006 as the deadline for motions for joinder of additional parties or amendment of pleadings. Plaintiff has indicated that it may seek to add SHP as a defendant in the instant action depending upon the discovery defendants produce. However, as plaintiff has yet to provide a basis to amend its complaint to included SHP, the Court will deny the motion without prejudice. Accordingly,

**IT IS HEREBY ORDERED** plaintiff's motion to compel defendants' compliance with plaintiff's document requests and interrogatories [Doc. #31] is granted as follows and otherwise denied.

**IT IS FURTHER ORDERED** that plaintiff shall select an

expert in the area of computer forensics to create mirror images of defendants' computer equipment following the procedure described in the above memorandum.

**IT IS FURTHER ORDERED** that defendants shall comply with Document Request No. 14 to the extent described in the above memorandum. Upon receipt of the documents and data provided by the Expert, defendants shall supplement their discovery responses within twenty days.

**IT IS FURTHER ORDERED** that defendants shall respond to Interrogatory Nos. 2, 3, 4, 6, 8, 12, and 14 no later than January 19, 2007.

**IT IS FURTHER ORDERED** that plaintiff's motion to extend the date for amending the complaint to name additional defendants [Doc. #25] is denied without prejudice.

**IT IS FURTHER ORDERED** that defendants' consent motion for extensions of time [Doc. #43] is granted as reflected in an amended case management order entered herein this day.

Dated this      27th      day of December, 2006.

        /s/ Donald J. Stohr
        UNITED STATES DISTRICT JUDGE