**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMERIWOOD INDUSTRIES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:06CV524-DJS |
| | ) | |
| **PAUL LIBERMAN, TODD FRIDLEY,** | ) | |
| **TED KLEIST, PINNACLE DESIGN, LLC.,** | ) | |
| **and PINNACLE DESIGN CORP.,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

On December 27, 2006, the Court granted plaintiff's motion to compel and ordered defendants to allow plaintiff's computer forensics expert to image defendants' hard drives, recover data on the images, and provide defendants with the recovered data for disclosure to plaintiff.[1] Subsequently, plaintiff filed two motions for sanctions asserting that defendants willfully and in bad faith spoliated evidence. The first motion asserts that defendants installed scrubbing software[2] on their computer hard drives after plaintiff filed the motion to compel and ran the

---

[1] The Court later granted the parties' joint motion to implement a search-term protocol to expedite the expert's process.

[2] On a basic level, when a computer user deletes a file, the computer designates the file as available memory (also known as unallocated space) and does not write over any portion of the file until the space is needed. Internet files downloaded for temporary use are also designated as available memory after the user stops utilizing them. Scrubbing software writes over and thus deletes the computer files and data designated as available memory, making the information unrecoverable.

software well after the Court granted the motion. The second motion asserts that defendant Liberman made mass deletions from two of his hard drives after plaintiff filed its motion to compel and days before this Court granted the motion. Defendants do not dispute that they used the software or that the deletions occurred, but instead proffer several explanations which are unpersuasive at best. Because defendants' intentional actions evidence a serious disregard for the judicial process and prejudice plaintiff, the Court will grant plaintiff's motions for sanctions, enter default judgment in favor of plaintiff, and shift to defendants plaintiff's costs, attorney's fees, and computer expert's fees relating to the motions for sanctions and the forensic imaging and recovery of defendants' hard drives.

## **Background**

Plaintiff manufacturers and sells various items of "ready to assemble" furniture, including stands for use with televisions and other electronic components--plaintiff's Electronics and Original Equipment Manufacturer ("OEM") business. Defendants Paul Liberman (plaintiff's former Regional Sales Manager for its Electronics and OEM business), Todd Fridley (plaintiff's former Vice President of Sales for its Electronics and OEM business), and Ted Kleist (plaintiff's former Senior Vice President of Sales and Marketing) allegedly created and are now principals and employees of defendant Pinnacle Design Corp. and defendant Pinnacle Design,

LLC (collectively referred to as "Pinnacle"). Plaintiff asserts that it directly competes with defendant Pinnacle in the Electronics and OEM market.

Plaintiff's first amended complaint alleges that defendants improperly used plaintiff's computers, confidential files, confidential information regarding its ready-to-assemble television stand business, and defendant former employees' positions of trust to sabotage plaintiff's business relationships and divert plaintiff's business to themselves. Specifically, plaintiff asserts the following causes of action: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) tampering with computer data, Mo. Rev. Stat. § 569.095, and tampering with computer users, Mo. Rev. Stat. § 569.099; (3) breach of fiduciary duty and duty of loyalty; (4) interference with and inducement of breach of fiduciary duty and duty of loyalty; (5) misappropriation of trade secrets; (6) unfair competition; (7) tortious interference; and (8) conspiracy.[3]

Count I of defendants' counterclaim avers that plaintiff tortiously interfered with a contract between a third-party OEM and defendants for the manufacture of 50,000 Samsung OEM television stands. In Count II of the counterclaim, defendant Fridley asserts a breach of contract counterclaim seeking an unpaid 2005 bonus from

---

[3] Plaintiff asserts all counts against all defendants, except Count 4 (breach of fiduciary duty and duty of loyalty) which is asserted only against defendants Liberman, Fridley, and Kleist.

plaintiff. Finally, defendant Liberman brings counterclaim Counts III and IV, breach of contract and failure to pay wages, against plaintiff seeking unpaid commissions from 2005 and reimbursement for out-of-pocket expenses incurred while working for plaintiff in 2005.

**A.   Discovery Requests**

On June 16, 2006, plaintiff served defendants with discovery requests seeking, among other things, "[a]ll computer or portable or detachable hard drives, or mirror images thereof, used by Liberman, Fridley, or Kleist since May 2005." (Pl.'s First Set of Doc. Reqs. to Defs. Liberman and Kleist, Req. No. 14 [Doc. #73-2] at 8; Pl.'s First Set of Doc. Reqs. to Def. Fridley, Req. No. 14 [Doc. #73-2] at 19; Pl.'s First Set of Doc. Reqs. to Def. Pinnacle Design, Corp., Req. No. 17 [Doc. #73-3] at 8.)[4]  On October 6, 2006, plaintiff filed a motion to compel production of the hard drives.  On October 9, 2006, plaintiff's counsel sent defendants' counsel a letter summarizing a discussion the parties had during an October 6, 2006 teleconference.  In discussing defendants' hard drives, plaintiff's counsel's letter reminds defendants' counsel that:

> We restated our belief that we are entitled to a mirror image of the defendants' hard drives and stressed that given the ever changing nature of the information on hard

---

[4] Although defendant Pinnacle Design, LLC was not a party to the instant action when plaintiff served the discovery requests on June 16, 2006, plaintiff served the request on defendant Pinnacle Design, LLC after it became a party to the action.

4

> drives, we assume that defendants have already imaged
> their hard drives, and that, if they have not done so,
> they are obligated to immediately image their computers'
> hard drives so that the information is available, pending
> a ruling by the Court.

(Pl.'s Counsel's Oct. 9, 2006 Letter to Defs.' Counsel [Doc. #73-3] at 14.)

Although the Court has not held a hearing on the instant disputes, the matters have been thoroughly briefed. Plaintiff filed several declarations of its computer forensics expert, John F. deCraen of Alvarez & Marsal. While defendants mention in their briefs that they have consulted Alif Terranson, a computer forensics expert with United Forensics Corp., they have not filed any declarations signed by their expert contradicting Mr. deCraen's findings. Nor did defendants request a hearing until the Court forecasted its ruling by requesting additional briefing essentially addressing which portions of defendants' pleadings should be struck. The Eighth Circuit "has previously held that no hearing is necessary before sanctions are imposed where the record demonstrates a willful and bad faith abuse of discovery and the non-cooperating party could not be unfairly surprised by the sanction." Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir. 1999) (citing Comiskey v. JFTJ Corp., 989 F.2d 1007, 1012 (8th Cir.1993)). Similar circumstances exist in the instant action. Upon careful consideration of the parties' filings, the Court makes the following findings.

**B.  Spoliation**

All three individual defendants (Liberman, Fridley, and Kleist) installed a program called "Window Washer" on their respective computers after plaintiff filed its motion to compel and before the Court granted it.  Window Washer is a program designed to permanently delete or scrub files from a computer's hard drive.  Defendants submitted a copy of the software's packaging, which states that Window Washer "instantly improves PC performance by wiping away undesired files and fragments," "securely washes areas of your hard drive making previously deleted information unrecoverable," and "removes any remaining data fragments of previously deleted files that can otherwise be easily recovered."  (Defs.' Counsel's Decl. Ex. A [Doc. #79-2] at 6.)  As the packaging makes clear, a user may instruct the program to scrub a wide variety of file types in the computer's unallocated space.  In addition to scrubbing files and information, a user can permanently delete specific files by selecting the "shred" option, which overwrites the files.  The program offers users the further precaution of employing the "bleach" feature which gives "an additional layer of protection by overwriting files with random characters to make them completely unrecoverable."  (Defs.' Counsel's Decl. Ex. A [Doc. #79-2] at 7.)

Defendants installed the program on defendant Fridley's Toshiba laptop and defendant Kleist's Dell laptop on November 17,

2006; defendant Liberman's laptop on December 11, 2006; and defendant Fridley's HP laptop on December 25, 2006.  On December 27, 2006, this Court issued an order granting plaintiff's motion to compel production of defendants' hard drives and provided a protocol for the imaging and analysis.  The Court's order noted that:

> [O]ther deleted or active versions of emails may yet exist on defendants' computers. Additionally, other data may provide answers to plaintiff's other pertinent inquiries in the instant action, such as: what happened to the electronic files diverted from plaintiff to defendants' personal email accounts; where were the files sent; did defendants store, access or share the files on any portable media; when were the files last accessed; were the files altered; was any email downloaded or copied onto a machine; and did defendants make any effort to delete electronic files and/or "scrub" the computers at issue.

(Court's Order of Dec. 27, 2007 [Doc. #52] at 7.)  That same evidence would be destroyed and permanently deleted by installing and operating defendants' scrubbing software.

The parties arranged for plaintiff's computer expert to image defendant Liberman's hard drives on January 17, and defendant Fridley's and defendant Kleist's hard drives on January 18, 2007. All three individual defendants ran Window Washer's scrubbing function after the Court order and days before they were to allow plaintiff's expert to image the hard drives.  Specifically, Window Washer's scrubbing function ran on Fridley's Toshiba on January 11, 2007, Liberman's laptop on January 15, 2007, and Fridley's HP and Kleist's Dell on January 16, 2007.  Additionally, defendant

Liberman ran the aforementioned "shred" option with the "bleach" feature on January 15, 2007--meaning Liberman intentionally deleted at least one file only two days before the date he was to hand the computer over for imaging.[5]

Mr. deCraen's forensic analysis could only determine the last date defendants ran the scrubbing function on each computer. It is impossible to determine all the dates on which defendants ran the scrubbing software. However, the software's scrubbing function will not operate automatically after installation. In setting up Window Washer, defendant Kleist set the program to run when he shut down his computer, defendant Liberman set the program to run when he turned on his computer, and defendant Fridley routinely ran the program once a week. Once the program runs, it is impossible to determine which particular files were scrubbed. However, the types of files and data that Window Washer routinely deletes include, among other things: (i) email communications, (ii) Microsoft Office documents, and (iii) computer data and usage logs (e.g., information regarding the use of detachable, portable storage media and the computer's Windows operating system).

In addition to installing and using the scrubbing software, on December 19, 2007, defendant Liberman manually made a

---

[5] Mr. deCraen only discovered Liberman's use of this feature by examining the "Prefetch" folder of Liberman's Windows operating system, which contains a copy of the files Liberman used to start programs. Window Washer did not leave any further trace of Liberman's actions.

mass deletion of 70 electronic files from his laptop and 576 electronic files from a portable hard drive. Mr. deCraen was only able to recover the names of the deleted files. Although defendant Liberman did not use the Window Washer software on the files, the contents of the deleted files, their usage information, and other metadata are unrecoverable. Mr. deCraen only found fragments of the files, none of which can be combined into a readable text because portions of the files have been overwritten.[6] From the documents' titles, many of the deleted files appear to have contained a broad array of plaintiff's business information, which is at issue in this case. (See Jim Kimminau Decl. Ex. 1 [Doc. #85-3] at 5.)

## **Analysis**

Pursuant to the Court's inherent powers and Fed. R. Civ. P. 37(b)(2), the Court may impose sanctions for spoliation of evidence. See Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 750 (8th Cir. 2004). Among many different sanctions, the Court may give a jury instruction on the "spoliation inference," an inference which permits the jury to assume that the destroyed evidence would have been unfavorable to the position of the offending party; exclude certain evidence of the offending party; enter judgment of

---

[6] Mr. deCraen recovered the file names from the computer's master file table, which would have been deleted if defendants used the Window Washer program to delete the files. Consequently, the Court only has a list of the files which were deleted without the aid of the Window Washer program.

default in favor of the prejudiced party; and/or impose the prejudiced party's attorney's fees on the offending party. Fed. R. Civ. P. 37(b)(2); see also Moyers v. Ford Motor Co., 941 F. Supp. 883, 885 (E.D. Mo. 1996).

This Court "is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." Chrysler Corp., 186 F.3d at 1022. "When a litigant's conduct abuses the judicial process, ... dismissal of a lawsuit [is] a remedy within the inherent power of the court." Pope v. Fed. Express Corp., 974 F.2d 982, 984 (8th Cir. 1992).

Some courts have found an adverse inference instruction sufficient to cure harm caused by the destruction of relevant evidence before litigation. See, e.g., Optowave Co., Ltd. v. Nikitin, Case. No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *12 (M.D. Fla. Nov. 7, 2006) (giving an adverse inference instruction after defendant permitted reformatting of hard drives after notice of possible litigation); Meredith v. Paccar, Inc., Case. No. 4:03CV959-CAS, 2005 WL 2033430, at *10 (E.D. Mo. Aug. 18, 2005) (giving an adverse inference instruction in a products liability case after plaintiff's insurance company's expert examined and subsequently disposed of the wreckage of the tractor at issue before litigation with plaintiff's knowledge). However, judgment of default is warranted after the intentional deletion of relevant

electronic files or data after a Court order to produce a hard drive containing the information.

Plaintiff has submitted two cases from other districts that are particularly on point. In Communications Center, Inc. v. Hewitt, the magistrate judge recommended entry of default on plaintiff's claims relating to the misappropriation of trade secrets and a breach of fiduciary duty after defendant ran a software scrubbing program called "Evidence Eliminator" despite a court order to produce mirror images of the hard drives. Communications Center, Inc. v. Hewitt, No. Civ.S-03-1968 WBS KJ, 2005 WL 3277983, at *3 (E.D. Cal. Apr. 5, 2005). In Krumwiede v. Birghton Associates, L.L.C., the trial court entered default judgment in an action involving an employer's claims of misappropriation of trade secrets and breach of employee agreement against a former employee. Krumwiede v. Birghton Associates, L.L.C., No. 05 C 3003, 2006 WL 1308629, at *10-11 (N.D. Ill. May 8, 2006). The employee had permanently deleted files and changed metadata both before and after a court order compelling production of his employer's laptop, which contained relevant evidence. Id.

The Court recognizes that the sanction of striking pleadings should be used sparingly because in this system of justice "the opportunity to be heard is a litigant's most precious right." Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir. 1977). Notably, "there is a strong policy in favor of deciding a case on

its merits, and against depriving a party of his day in court." Chrysler Corp., 186 F.3d at 1020 (affirming district court's sanction of striking pleadings after defendants repeatedly committed perjury in falsely responding to discovery requests).

Despite those considerations, in certain circumstances, an entry of default judgment may be the only sanction sufficient to right the wrongs committed during the discovery process. The Court may strike pleadings or render default judgment against a party for spoliation of evidence when the party acted in bad faith by engaging in an "intentional destruction [of evidence] indicating a desire to suppress the truth" and the action prejudiced the party seeking the evidence at issue. Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1006-07 (8th Cir. 2006) (quoting Stevenson, 354 F.3d at 746, 748). Defendants' actions meet those elements.

## A. Intentional Destruction

Window Washer is advertised as a tool to make electronic files unrecoverable. While the name sounds less reprehensible than the "Evidence Eliminator" software used in Communications Center, the purpose is the same. Plaintiff requested images of defendants hard drives. Defendants refused. Plaintiff sought a motion to compel from the Court. Defendants installed software on their computers making potentially relevant documents and data unrecoverable. Defendant Liberman made mass deletions from his computer and portable hard drive. The Court compelled the

production of the hard drives. Defendants continued to run the software and Liberman made at least one additional deletion of a file. In short, defendants knew information on their computers was discoverable and they destroyed it. The discovery process cannot and will not function when a party exhibits such blatant disregard for basic tenets of the system.

Defendants submit a variety of explanations for their actions ranging from the improbable to the impossible. They aver without evidence that all four of their computers (which are different makes and models) were suffering from the same persistent computer malfunctions--repeated computer crashes and slow operation. To solve the problems, defendants installed and operated Window Washer. This is the brick-and-mortar equivalent of shredding discoverable files after the start of litigation because a filing cabinet is disorganized.

Mr. deCraen examined each computer's event log, which tracks major events such as computer crashes, and found that of the two computers with event logs extending back far enough, neither reflected any computer crashes in the weeks preceding the installation of the scrubbing software. Furthermore, he opines that several other products on the market cure these same computer problems without erasing discoverable files and data.

Defendants point out that they have produced several documents from the computers and have filed declarations asserting that each individual defendant has not "intentionally deleted any

13

files that could be responsive to any discovery request in this action from [his computer(s)] using Window Washer or any other computer program." (Kleist Decl. ¶ 9 [Doc. #79-3]; Fridley Decl. ¶ 8 [Doc. #79-4]; Liberman Decl. ¶ 11 [Doc. #79-5].) Contrary to defendants' argument, the fact that they have produced documents from their computers does not even begin to remove the taint left by installing scrubbing software and intentionally destroying documents and data. Additionally, given the evidence before the Court, the declarations are not credible. Days after defendants submitted the declarations, plaintiff filed a second motion for sanctions asserting that defendant Liberman made a mass deletion of documents which were responsive to several of plaintiff's discovery requests.

Liberman's purported justification that he was merely trying to backup his laptop onto his portable hard drive is belied by the fact that he also deleted documents on his laptop. Furthermore, the deletion was unnecessary. Liberman's portable hard drive had about 54 gigabytes of free space and only about 1.8 gigabytes were deleted. Even if this was Liberman's routine procedure, he had an affirmative duty to suspend that practice after he was on notice that the files on the device were discoverable and the subject of a motion to compel.[7] See, e.g.,

---

[7] Some courts have held that "[o]nce a party is on notice that files or documents in their possession are relevant to pending litigation, the failure to prevent the destruction of relevant documents crosses the line between negligence and bad faith."

14

Stevenson, 354 F.3d at 747-48 (affirming finding of bad faith in failure to suspend document retention procedure once party should have known litigation over deadly train accident was likely). With respect to both motions for sanctions, defendants' bad faith is evident.

**B.     Prejudice**

The Court also finds that the destruction of evidence has significantly prejudiced plaintiff. The fact that plaintiff cannot show exactly what information and documents were destroyed, as defendants argue, is precisely the problem. Plaintiff's claims center around actions defendants allegedly took with electronic documents on their computers. Specifically, plaintiff alleges that the individual defendants forwarded plaintiff's customer information and other trade secrets from plaintiff's computers to defendants' personal email accounts, presumably for the purpose of using other computers to store, access, use, and disseminate those files. To show that defendants took and used plaintiff's trade secrets and confidential business information, plaintiff needs the data and files on defendants' computers to show what information was taken, when it was used, whether it was copied, and where it was sent. Defendants' destruction of that evidence prejudiced plaintiff to the point that plaintiff cannot make its case otherwise. See Moyers, 941 F. Supp. at 885 (entering judgment

---

Krumwiede, 2006 WL 1308629, at *8.

against plaintiff where destruction of evidence before litigation "render[ed] a full defense impossible"). Mr. deCraen can only identify when defendants last used the scrubbing software, not how many times they used it or what they deleted with it.

Defendant Liberman asserts that the documents he deleted were only on his laptop and portable hard drive because he transferred files from his Ameriwood laptop to his home laptop after experiencing computer problems while he was still in plaintiff's employ. If that were the case, Liberman should not have destroyed the allegedly exculpatory metadata.

"[N]o sanction short of default is available to return the parties to the position in which they would have been but for the deliberate destruction by [defendants] of evidence potentially favorable to the plaintiff." Communications Center, 2005 WL 3277983, at *3 (recommending entry of default after destruction of electronic evidence). Defendants' conduct "has precluded this action being decided on the merits; the jury can no longer weigh conflicting evidence because [defendants have] ensured whatever evidence on certain of defendants' computers that may have been favorable to plaintiff will never see the light of day." Id.

Plaintiff has records showing that defendants diverted design specifications specific to at least one of plaintiff's clients, Samsung, from the individual defendants' Ameriwood email addresses to their personal email addresses. Just as in Krumwiede, plaintiff "was relying on the evidence contained in [the computers]

16

to establish that [the opposing party] used [plaintiff's] secrets and confidential information improperly and interfered with [plaintiff's] business and clients." Krumwiede, 2006 WL 1308629, at *10 (entering default judgment after destruction of electronic evidence). Any sanction less than default will not cure the prejudice already suffered by plaintiff.

**C.  Sanctions and Trial on Damages**

The spoliated evidence relates to all the claims and counterclaims before the Court. Plaintiff's claims all center around the idea that the individual defendants abused their positions of trust while in plaintiff's employ, misappropriated trade secrets and confidential information through electronic means, and used that information to interfere with plaintiff's business. Those same claims are the affirmative defenses plaintiff asserts to defendants' counterclaims. Specifically, in response to the counterclaim of tortious interference, plaintiff avers that it only passed along accurate recitations of defendants' misdeeds to the third-party OEM, with whom plaintiff used to do business. With respect to the breach of contract and failure to pay wages claims, plaintiff asserts that defendants' actions, which are the subject of the complaint, breached the employment agreement, thus freeing plaintiff of its obligations.

The Court will strike defendants' amended and consolidated answer and counterclaim with respect to all the claims

17

in plaintiff's first amended complaint and defendants' counterclaims. Furthermore, the Court will enter default in favor of plaintiff and against defendants on all claims and counterclaims pending before the Court.

Plaintiff seeks the following relief in its first amended complaint:

> (a) Damages for all of Ameriwood's compensable injuries and for the defendants' unjust enrichment, in an amount to be proven at trial, including but not limited to lost profits, disgorgement of all benefits reaped by Defendants, plus interest and costs;
> (b) An accounting and a constructive trust as to all funds and other benefits received by Defendants as a result of their wrongdoing;
> (c) Forfeiture (and payment to Plaintiff) of all compensation, including bonuses, earned by Defendants during the period in which their disloyal conduct occurred;
> (d) Appropriate injunctive relief sufficient to compensate Ameriwood for the unfair advantage and headstart obtained by Defendants through their unlawful conduct and to protect Ameriwood's Confidential Information from future and continued misappropriation by Defendants;
> (e) An order directing [Defendants] to immediately return to Ameriwood any and all documents and/or files (whether in paper or electronic form) containing or reflecting or referring to any of Ameriwood's Confidential Information;
> (f) Reimbursement for all expenditures reasonably and necessarily incurred by Ameriwood to verify which data, and to what extent its computers and computer systems, were altered, damaged or deleted by Defendants;
> (g) Attorneys fees and costs;
> (h) Exemplary and punitive damages in an amount to be proven at trial; and
> (i) Such other and further other relief that this Court deems just and proper.

(Pl.'s First Am. Compl. [Doc. #28] at 23-24.) The Court will allow plaintiff to submit a proposed partial default judgment concerning

items (d) and (e) no later than July 20, 2007. This action will proceed to a jury trial solely on the issue of the damages listed in items (a), (b), (c), and (h), as that is the best means for their assessment. Both parties will be permitted to present evidence on these damages. Attorney's fees and costs are properly sought in post-judgment motions.

In addition to default judgment and as part of the sanctions, plaintiff is entitled to an award of costs and fees relating to its attorneys' and computer expert's work associated with the motions for sanctions and the forensic imaging and recovery of defendants' hard drives. See Fed. R. Civ. P. 37(b)(2). Plaintiff incurred these expenses as a direct result of defendants' misconduct and they shall bear those costs. The Court will grant plaintiff leave to file a petition detailing these fees and costs.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for sanctions [Doc. #72] is granted as follows.

**IT IS FURTHER ORDERED** that plaintiff's second motion for sanctions [Doc. #85] is granted as follows.

**IT IS FURTHER ORDERED** that defendants' amended and consolidated answer and counterclaim [Doc. # 38] is stricken, and default is entered with respect to all of plaintiff's claims in its first amended complaint and with respect to defendants' counterclaims.

**IT IS FURTHER ORDERED** that, no later than July 20, 2007, plaintiff may file a motion for entry of partial default judgment concerning injunctive relief and the return of plaintiff's confidential information, as discussed in the above memorandum.

**IT IS FURTHER ORDERED** that, no later than July 20, 2007, plaintiff may file a petition for the costs and fees relating to its attorneys' and computer expert's work associated with the motions for sanctions and the forensic imaging and recovery of defendants' hard drives.

**IT IS FURTHER ORDERED** that the parties may conduct further discovery on the issue of plaintiff's damages, as discussed in the above memorandum, and a fourth amended case management order shall issue herein this day.

Dated this __3rd__ day of July, 2007.

                                          /s/Donald J. Stohr
                                          UNITED STATES DISTRICT JUDGE